UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBIN HANNON, Plaintiff | ) | CIVIL ACTION NO. |
| v. | ) | COMPLAINT AND DEMAND FOR JURY TRIAL |
| JOHNSON & JOHNSON, JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., f/k/a R.W. JOHNSON PHARMACEUTICAL RESEARCH INSTITUTE, and ORTHO-McNEIL PHARMACEUTICAL, INC., Defendants | ) | CA 07 127 |

COMES NOW, ROBIN HANNON ("Plaintiff"), by and through her undersigned attorneys, hereby sues the defendants, JOHNSON & JOHNSON, which has its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933, JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., f/k/a R.W. JOHNSON PHARMACEUTICAL RESEARCH INSTITUTE, which has its principal place of business at 920 Route 202 South, P.O. Box 300, Mail Stop 2628, Raritan, New Jersey 08869, and ORTHO-McNEIL PHARMACEUTICAL, INC., which has its principal place of business at 1000 Route 202 South, P.O. Box 300, Raritan, New Jersey 08869, (hereinafter collectively referred to as "Defendants"), and states, alleges, and avers as follows:

**OVERVIEW**

1. This is an action for damages suffered by Plaintiff as a direct and proximate result of the Defendants' negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of the combination transdermal birth control patch known as ORTHO EVRA® (hereinafter referred to as "ORTHO EVRA" or "the subject product").

2. At all times material hereto, ORTHO EVRA was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by the Defendants herein.

**JURISDICTION AND VENUE**

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of a State that is different from the States in which the Defendants are incorporated and have their principal places of business, resulting in diversity jurisdiction, and the amount in controversy exceeds the sum or value of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of interest and costs.

4. The Court has specific personal jurisdiction over the Defendants pursuant to R.I.G.L. § 9-5-33, as Plaintiff's claims arise out of the Defendants' transaction of business and the commission of tortious acts within the State of Rhode Island, and the Court has general personal jurisdiction over the Defendants by virtue of their substantial, continuous, and systematic contacts with the State of Rhode Island, unrelated to Plaintiff's claims.

5. Venue for this cause of action is proper in the District of Rhode Island, pursuant to and in accordance with 28. U.S.C. § 1391 as the Defendants have significant contact with this district by virtue of doing business within this judicial district and because a substantial part of the events and/or omissions giving rise to the claims occurred within this district.

**PARTIES**

6. Plaintiff Robin Hannon is a natural person and a resident of the State of Rhode Island.

7. The Defendant, JOHNSON & JOHNSON, is a New Jersey corporation which has its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

8. At all times material hereto, the Defendant, JOHNSON & JOHNSON, was engaged in the business of designing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling ORTHO EVRA.

9. The Defendant, JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., f/k/a R.W. JOHNSON PHARMACEUTICAL RESEARCH INSTITUTE, (hereinafter referred to as "JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.") is a limited liability company organized under the laws of New Jersey, which has its principal place of business at 920 Route 202 South, P.O. Box 300, Mail Stop 2628, Raritan, New Jersey 08869.

10. At all times material hereto, the Defendant, JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling ORTHO EVRA.

11. The Defendant, JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., is a part of the Defendant JOHNSON & JOHNSON'S "Family of Companies".

12. Upon information and belief, the Defendant, JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., was formed by a 2001 merger of The Janssen Research Foundation and the R.W. Johnson Pharmaceutical Research Institute.

13. The Defendant, ORTHO-McNEIL PHARMACEUTICAL, INC., is a Delaware corporation which has its principal place of business at 1000 Route 202 South, P.O. Box 300, Raritan, New Jersey O8869.

14. At all times material hereto, the Defendant, ORTHO McNEIL PHARMACEUTICAL, INC., was engaged in the business of designing, developing,

manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling ORTHO EVRA.

15. The Defendant, ORTHO-McNEIL PHARMACEUTICAL, INC., is a wholly owned subsidiary of the Defendant, JOHNSON & JOHNSON.

**FACTUAL ALLEGATIONS**

16. ORTHO EVRA is a transdermal contraceptive patch designed to prevent pregnancy.

17. The Defendant, ORTHO-McNEIL PHARMACEUTICAL, INC., describes itself as a "pioneer and leader in contraception and women's health care, offering the broadest range of prescription birth control options, including the first transdermal contraceptive patch, ten birth control pills, and diaphragms."

18. ORTHO EVRA is the first and only transdermal contraceptive patch on the market in the United States.

19. At or about the time of introducing the subject product to the market, the Defendant, ORTHO-McNEIL PHARMACEUTICAL, INC.'s patent for its best-selling oral contraceptive, Ortho Tri-Cyclen® (hereinafter referred to as "Ortho Tri-Cyclen"), was about to expire.

20. Thus, it was a priority for the Defendant, ORTHO-McNEIL PHARMACEUTICAL, INC., to obtain FDA approval of ORTHO EVRA so that it could offset the lost income previously realized from Ortho Tri-Cyclen.

21. The Defendants, by and through their agent(s), servant(s) and/or employee(s), filed a New Drug Application ("NDA") for ORTHO EVRA with the FDA on or about December 21, 2000, denoted as NDA 21-180.

22. The NDA states that the intended use of ORTHO EVRA is for prevention of pregnancy.

23. The subject product's NDA did not include adequate safety data.

24. Notwithstanding the Defendants' assertion in the NDA that ORTHO EVRA was safe for use in the prevention of pregnancy, the Defendants knew or should have known that the subject product was unsafe, defective, unreasonably dangerous, and not fit for its intended purposes.

25. The risk of developing and/or dying from a blood clot is three (3) times as high among women who use ORTHO EVRA compared to women who use traditional oral contraceptive pills.

26. At all times material hereto, and prior to the FDA's approval of the subject product, the Defendants knew or should have known that the risk of developing and/or dying from a blood clot is three (3) times as high among women who use ORTHO EVRA compared to women who use traditional oral contraceptive pills.

27. Prior to the FDA's approval of the NDA for ORTHO EVRA, the only studies specifically examining ORTHO EVRA's effect on humans were Phase III clinical trials funded and conducted by the Defendants.

28. In the aforesaid clinical trials, the subject product caused or contributed to cases of pulmonary embolism and other venous thrombotic injuries.

29. The incidence of embolism and thrombotic injuries in the aforesaid clinical trials was approximately six (6) times greater that the incidence of such events in a widely used class of contraceptives using hormone levonorgestrel.

30. In recognition of the above-referenced risks, the FDA Medical officer's review expressed serious safety concerns regarding ORTHO EVRA when he stated:

> Post-marketing surveillance for DVT (Deep Venous Thrombosis) and PE (Pulmonary Embolism) events will be important, as these are potential serious adverse risks (with two cases of pulmonary emboli in the clinical trials) with this new delivery system for contraception…

ORTHO EVRA, New Drug Application 21-180 Medical Officer's Review (Nov. 20, 2001).

31. Notwithstanding the above, on or about November 20, 2001, the FDA initially approved ORTHO EVRA for use as a contraceptive to prevent pregnancy.

32. The Defendants aggressively marketed ORTHO EVRA shortly following its approval by the FDA.

33. At all times material hereto, the Defendants failed to properly disclose safety hazards associated with ORTHO EVRA.

34. The packaging insert accompanying ORTHO EVRA formerly stated that "the contraceptive patch is expected to be associated with similar risks" to that of other hormonal contraceptives, including birth control pills, injectables, implants and the vaginal ring.

35. In the same package insert, however, the Defendants stated that the safety information they provide to consumers is "derived primarily from studies of birth control pills."

36. The package insert for the subject product further stated that, while the subject product and other combination hormonal contraceptives contain both an estrogen and a progestin, "[t]here is no epidemiological data available to determine whether safety and efficacy with the transdermal route of administration would be different that the oral route."

37. The package insert further stated:

a. "[i]t is unknown if the risks of venous thromboembolism with ORTHO EVRA use is different than with use of combination oral contraceptives"; and

b. "[i]t is unknown whether ORTHO EVRA is distinct from other combination hormonal contraceptives with regard to the occurrence of venous and arterial thrombosis."

38. The package insert accompanying the subject product is misleading.

39. The package insert accompanying the subject product is in direct conflict with data collected in the Defendants' clinical studies in that the package insert suggested that the risks associated with the subject product are equivalent to that of oral contraceptives.

40. In the seventeen month period from April 2002 through September 2003, the FDA logged 9,116 reports of adverse reactions to ORTHO EVRA.

41. By way of comparison, the leading oral contraceptive, Ortho Tri-Cyclen, which has six (6) times as many users as ORTHO EVRA, only generated 1,237 adverse reports to the FDA during the six (6) year period from November 1997 through September 2003.

42. From approximately May 1, 2002, through April 30, 2003, there were forty-four adverse events of injury or death associated with the subject product. These incidents related to blood-clots and related brain injuries, deep vein thromboses, pulmonary embolisms, strokes, and heart attacks.

43. From approximately May 1, 2002, through April 30, 2003, there were only seventeen adverse events reported to the FDA related to Ortho Tri-Cyclen for injuries or deaths from blood-clots and related brain injuries, deep vein thromboses, pulmonary embolisms strokes, and/or heart attacks.

44. Notwithstanding the well documented safety hazards associated with the subject product, the Defendants did not conduct any meaningful post-market surveillance as suggested in the above-referenced FDA Medical Officer's Review.

45. At all times material hereto, the Defendants, by and through their agents, servants and/or employees, failed to adequately warn physicians and consumers, including plaintiff Robin Hannon herein, that the risk of developing blood clots, pulmonary emboli, strokes, heart attacks and/or deep vein thrombosis from ORTHO EVRA is significantly higher than the risk of

developing blood clots, pulmonary emboli, strokes, heart attacks and/or deep vein thrombosis while using oral contraceptives.

47. On November 10, 2005, Defendants updated the prescribing information for Ortho Evra to include a new warning and provide additional information on the differences between a weekly transdermal delivery system and a daily oral delivery system. The new warning states:

> The pharmacokinetic (PK) profile for the ORTHO EVRA® patch is different from the PK profile for oral contraceptives in that it has higher steady state concentrations and lower peak concentrations. AUC and average concentration at steady state for ethinyl estradiol (EE) are approximately 60% higher in women using ORTHO EVRA® compared with women using an oral contraceptive containing EE 35 µg. In contrast, peak concentrations for EE are approximately 25% lower in women using ORTHO EVRA®. Inter-subject variability results in increased exposure to EE in some women using either ORTHO EVRA® or oral contraceptives. However, inter-subject variability in women using ORTHO EVRA® is higher. In general, increased estrogen exposure may increase the risk of adverse events. However, it is not known whether there are changes in the risk of serious adverse events based on the differences in pharmacokinetic profiles of EE in women using ORTHO EVRA® compared with women using oral contraceptives containing 35 µg of EE. (See CLINICAL PHARMACOLOGY, Transdermal versus Oral Contraceptives).

48. The new label dated November 10, 2005 also contains a new section entitled "Transdermal versus Oral Contraceptives." In a study of thirty-two (32) healthy female volunteers, it was found that

> [The] overall exposure for NGMN [norelgestromin] and EE [ethinyl estradiol] (AUC and $C_{ss}$) was higher in subjects treated with ORTHO EVRA® for both Cycle 1 and Cycle 2, compared to that for the oral contraceptive, while $C_{max}$ values were higher in subject administered the oral contraceptive. Under steady-state conditions, $AUC_{0-168}$ and $CC_{ss}$ for EE were approximately 55% and 60% higher, respectively, for the transdermal patch, and the $C_{max}$ was about 35% higher for the oral contraceptive, respectively. Inter-subject variability (%CV) for the PK parameters following delivery from ORTHO EVRA® was higher relative to the variability determined from the oral contraceptive.

49. The November 10, 2005 label also provides that in the study of thirty-two (32) healthy female volunteers, the percent change in systemic estrogenic activity related to the Sex Hormone Binding Globulin (SHBG) was higher for ORTHO EVRA® users compared to women taking the oral contraceptive.

50. On September 20, 2006, the Defendants disclosed for the first time that a study demonstrated that women who use ORTHO EVRA are at more than twice the risk of VTEs than users of oral contraceptives.

51. At all times material hereto, the Defendants, knew or should have known that the risks of ORTHO EVRA included severe and life threatening complications and side effects.

52. At all times material hereto, the Defendants, by and through their agents, servants, and/or employees, negligently, recklessly and/or carelessly marketed, distributed and/or sold the subject product without adequate instructions or warnings of the subject product's serious side effects and unreasonably dangerous risks.

53. Plaintiff Robin Hannon was prescribed and used the subject product as directed from approximately May 2003, through approximately April 13, 2004.

54. Prior to using ORTHO EVRA, plaintiff Robin Hannon was in good health and able to perform all of her usual and customary activities.

55. On or about April 13, 2004, plaintiff Robin Hannon presented to the Linden Tree Family Health Center with complaints of dizziness, blurred vision, slurred speech, and difficulty walking. Based on her physician's opinion that plaintiff Robin Hannon had suffered from a stroke, she was transferred to Newport Hospital.

56. Diagnostic testing performed on plaintiff Robin Hannon at the aforesaid hospital confirmed that she had suffered from a left thalamic cerebral vascular accident.

57. Plaintiff Robin Hannon remained hospitalized for two days and was discharged on April 15, 2004.

58. Plaintiff Robin Hannon's discharge medication consisted of Plavix and aspirin.

59. Plaintiff Robin Hannon continues to experience pains associated with the stroke she suffered as a use of the Ortho Evra birth control patch.

60. Had the Defendants properly disclosed the risks associated with the subject product, plaintiff Robin Hannon would not have used it.

61. As alleged herein, as a direct and approximate result of the Defendants' negligence and wrongful conduct, and the unreasonably dangerous and defective characteristics of the subject product, plaintiff Robin Hannon suffered severe and permanent physical injuries, including but not limited to deep vein thrombosis. Plaintiff Robin Hannon has lost past earnings and has suffered a loss of earning capacity. Plaintiff Robin Hannon has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff Robin Hannon has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff Robin Hannon's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
## (NEGLIGENCE)

62. Plaintiff incorporates by reference paragraphs 1 through 61 above, as though fully set forth herein.

63. At all times material hereto, the Defendants, and each of them individually, had a duty to exercise reasonable care to consumers, including Plaintiff Robin Hannon herein, in the

design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of ORTHO EVRA.

64. The Defendants, and each of them individually, breached their duty of reasonable care to plaintiff Robin Hannon in that they negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, and/or sold the subject product.

65. Plaintiff Robin Hannon's injuries and damages alleged herein were and are the direct and proximate result of the carelessness and negligence of the Defendants as follows:

a. In its design, development, research, manufacture, testing, packaging, promotion, marketing, sale and/or distribution of the subject product;

b. In its failure to warn or instruct, and/or adequately warn or adequately instruct, users of the subject product, including plaintiff Robin Hannon herein, of said product's dangerous and defective characteristics;

c. In its design, development, implementation, administration, supervision and/or monitoring of clinical trials for the subject product;

d. In its promotion of the subject product in an overly aggressive, deceitful and fraudulent manner, despite evidence as to the product's defective and dangerous characteristics due to its propensity to cause serious injury and/or death;

e. In representing that the subject product was safe for its intended use when, in fact, the product was unsafe for its intended use;

f. In failing to perform appropriate pre-market testing of the subject product;

h. In failing to perform appropriate post-market surveillance of the subject product.

66. The Defendants knew or should have known that consumers such as Plaintiff Robin Hannon herein would foreseeably suffer injury as a result of the Defendants' failure to exercise reasonable and ordinary care.

67. As a direct and proximate result of Defendants' carelessness and negligence, Plaintiff Robin Hannon suffered severe and permanent physical injuries, including but not limited to cerebral vascular accidents. Plaintiff Robin Hannon has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff Robin Hannon has lost past earnings and has suffered a loss of earning capacity. Plaintiff Robin Hannon has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff Robin Hannon's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SECOND CLAIM FOR RELIEF
## (STRICT LIABILITY)

68. Plaintiff incorporates by reference paragraphs 1 through 67 above, as though fully set forth herein.

69. At all times material to this action, the Defendants were responsible for and engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling ORTHO EVRA.

70. The subject product is defective and unreasonably dangerous to consumers.

71. ORTHO EVRA is defective in its design or formulation in that it is not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

72. At all times material to this action, ORTHO EVRA was expected to reach, and did reach consumers in the State of Rhode Island and throughout the United States, including plaintiff Robin Hannon herein, without substantial change in the condition in which it was sold.

73. At all times material to this action, ORTHO EVRA was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

a. When placed in the stream of commerce, ORTHO EVRA contained manufacturing defects and unreasonably dangerous design defects which rendered the product unreasonably dangerous and not reasonably safe as intended to be used, subjecting plaintiff Robin Hannon to risks that exceeded the benefits of the subject product, including but not limited to the risks of developing blood clots, pulmonary emboli, strokes, heart attacks and/or deep vein thrombosis, which cause serious, crippling injuries and even death in an unacceptably high number of its users;

b. When placed in the stream of commerce, ORTHO EVRA was defective in design and formulation, and not made in accordance with the Defendants' specifications or performance standards, making the use of ORTHO EVRA more dangerous than an ordinary consumer would expect, and more

dangerous than other risks associated with the other contraceptive medications and similar drugs on the market for the prevention of pregnancy;

c. The subject product's design defects and manufacturing defects occurred while the product was in the possession and control of the Defendants;

d. The subject product's design defects and manufacturing defects existed before it left the control of the Defendants;

e. ORTHO EVRA was insufficiently tested;

f. ORTHO EVRA caused harmful side effects that outweighed any potential utility; and

g. ORTHO EVRA was not accompanied by adequate instructions and/or warnings to fully apprise consumers, including plaintiff Robin Hannon herein, of the full nature and extent of the risks and side effects associated with its use, thereby rendering Defendants liable to Plaintiff, individually and collectively.

74. The Ortho Evra designed, developed, manufactured and/or supplied by Defendants was defective due to inadequate warnings or instructions because Defendants knew or should have known that the product created a risk of developing blood clots, pulmonary emboli, strokes, heart attacks and/or deep vein thrombosis, which cause serious, crippling injuries and even death in an unacceptably high number of its users, and Defendants failed to adequately warn of said risks.

75. The Ortho Evra manufactured and/or supplied by Defendants was defective due to inadequate warnings and/or inadequate testing.

76. The Ortho Evra manufactured and/or supplied by Defendants was defective due to inadequate post-marketing warnings or instructions because, after the Defendants knew or should

have known the risk of injuries from Ortho Evra, they failed to provided adequate warnings to prescribing physicians, users or consumers of the product and continued to promote the product.

77. In addition, at the time the subject product left the control of the Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of plaintiff Robin Hannon's injuries without impairing the reasonably anticipated or intended function of the product. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of plaintiff Robin Hannon's injuries without substantially impairing the product's utility.

78. As a direct and proximate result of the subject product's defective design and marketing, plaintiff Robin Hannon suffered severe and permanent physical injuries, including but not limited to cerebral vascular accidents. Plaintiff Robin Hannon has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff Robin Hannon has lost past earnings and has suffered a loss of earning capacity. Plaintiff Robin Hannon has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff Robin Hannon's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## THIRD CLAIM FOR RELIEF
## (MISREPRESENTATION)

79. Plaintiff incorporates by reference paragraphs 1 through 78 above, as though fully set forth herein.

80. Defendants misrepresented the safety of ORTHO EVRA and fraudulently, intentionally, recklessly, or negligently concealed material adverse information regarding the safety of the subject product when it had a duty to disclose such information to the consuming public, including plaintiff Robin Hannon herein, and their physicians.

81. Defendants made false or misleading statements and omissions about the safety of ORTHO EVRA in its labeling, advertising, promotional materials, and other marketing efforts by failing to sufficiently alert consumers, including plaintiff Robin Hannon herein, of the dangerous risks and reactions associated with the subject product, including but not limited to its propensity to cause blood clots, pulmonary emboli, strokes, heart attacks, deep vein thrombosis, and other serious injuries and side effects, notwithstanding the Defendants' knowledge of an increased risk of these injuries and side effects over other forms of contraception.

82. Plaintiff Robin Hannon was prescribed and used the subject product for its intended purpose.

83. Plaintiff Robin Hannon could not have discovered any defect in the subject product through the exercise of reasonable care.

84. The Defendants, as manufactures and/or distributors of the subject prescription product, are held to the level of knowledge of an expert in the field.

85. The warnings that were given by the Defendants were not accurate, clear and/or were ambiguous.

86. The warnings that were given by the Defendants failed to properly warn physicians and consumers of the increased risks of blood clots, pulmonary emboli, strokes, heart attacks, deep vein thrombosis, and other serious injuries and side effects.

87. The Defendants should have reasonably foreseen that consumers, including plaintiff Robin Hannon herein, were likely to rely on the facts misrepresented or not disclosed.

88. Plaintiff Robin Hannon, individually and through her prescribing physician, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

89. The Defendants had a continuing duty to warn plaintiff Robin Hannon of the dangers associated with the subject product.

90. Had plaintiff Robin Hannon received adequate warnings regarding the risks of the subject product, she would not have used it.

91. As a direct and proximate result of the subject product's defective and inappropriate warnings, plaintiff Robin Hannon suffered severe and permanent physical injuries, including but not limited to cerebral vascular accidents. Plaintiff Robin Hannon has endured substantial pain and suffering. She has incurred significant expenses of medical care and treatment, and will continue to incur such expenses in the future. Plaintiff Robin Hannon has lost past earnings and has suffered a loss of earning capacity. Plaintiff Robin Hannon has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff Robin Hannon's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**FOURTH CLAIM FOR RELIEF**
**(BREACH OF IMPLIED WARRANTY)**

92. Plaintiff incorporates by reference paragraphs 1 through 91 above, as though fully set forth herein.

93. The Defendants designed, manufactured, marketed, distributed, supplied and sold the subject product for the prevention of pregnancy.

94. At the time that the Defendants manufactured, marketed, distributed, supplied, and/or sold ORTHO EVRA, they knew of the use for which the subject product was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use.

95. Plaintiff Robin Hannon, individually and through her prescribing physician, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

96. Plaintiff Robin Hannon was prescribed, purchased, and used the subject product for its intended purpose.

97. Due to the Defendants' wrongful conduct as alleged herein, plaintiff Robin Hannon could not have known about the nature of the risks and side effects associated with the subject product until after she used it.

98. Contrary to the implied warranty for the subject product, ORTHO EVRA was not of merchantable quality, and was not safe or fit for its intended uses and purposes, as alleged herein.

99. As a direct and proximate result of Defendants' breach of implied warranty, plaintiff Robin Hannon suffered severe and permanent physical injuries, including but not limited to cerebral vascular accidents. Plaintiff Robin Hannon has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff Robin Hannon has lost past earnings and has suffered a loss of earning capacity. Plaintiff Robin Hannon has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff Robin Hannon's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**FIFTH CLAIM FOR RELIEF**
**(BREACH OF EXPRESS WARRANTY)**

100. Plaintiff incorporates by reference paragraphs 1 through 99 above, as through fully set forth therein.

101. Defendants expressly warranted that ORTHO EVRA was safe and fit for use by consumers and users including Plaintiff Robin Hannon for its intended purpose, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and fit for its intended use.

102. At the time of the making of the express warranties, Defendants knew or should have known of the purpose for which ORTHO EVRA was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.

103. At the time of the making of the express warranties, Defendants knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that ORTHO EVRA was not safe and fit for its intended use and, in fact, produces serious injuries to the user.

104. Members of the medical community, including, but not limited to, Plaintiff Robin Hannon's physicians, reasonably relied upon the skill and judgment of Defendants, and upon said express warranties, in prescribing, recommending and/or dispensing ORTHO EVRA.

105. Plaintiff Robin Hannon relied on the Defendants' express warranties.

106. Defendants breached said express warranties, in that ORTHO EVRA was not safe and fit for its intended use and, in fact, causes debilitating and potentially lethal side effects with greater frequency than safer alternative methods of birth control.

107. By the conduct alleged, Defendants, by and through their agents, servants and/or employees expressly warranted to Plaintiff and Plaintiff's physicians that the products were merchantable and fit for the purpose intended.

108. As a direct and proximate result of the Defendants' breach of express warranty, Plaintiff Robin Hannon suffered severe and permanent physical injuries, including but not limited to cerebral vascular accidents. Plaintiff Robin Hannon has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff Robin Hannon has lost past earnings and has suffered a loss of earning capacity. Plaintiff Robin Hannon has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff Robin Hannon's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SIXTH CLAIM FOR RELIEF
## (VIOLATION OF CONSUMER PROTECTION STATUTES)

109. Plaintiff incorporates by reference paragraphs 1 through 108 above, as though fully set forth therein.

110. The Defendants engaged in commercial conduct by selling ORTHO EVRA.

111. The Defendants misrepresented and omitted material information regarding ORTHO EVRA by failing to disclose known risks.

112. The Defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that

others rely on such concealment, suppression, or omission in connection with the sale and advertisement of ORTHO EVRA, in violation of Rhode Island General Laws § 6-13.1-1 et. seq. and other similar statutes.

113. Rhode Island, all other states and the District of Columbia have enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices. The Defendants violated these statutes by knowingly and falsely representing that ORTHO EVRA was fit to be used for the purpose for which it was intended when the Defendants knew it was defective and dangerous, and by other acts alleged herein.

114. The Defendants engaged in the deceptive acts and practices alleged herein in order to sell ORTHO EVRA to the public, including plaintiff Robin Hannon.

115. Plaintiff, therefore, seeks all damages recoverable under the Rhode Island General Laws. Specifically, Plaintiff seeks all damages including but not limited to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

116. As a direct and proximate result of the Defendants' violation of the Rhode Island General Laws § 6-13.1-1 et. seq., plaintiff Robin Hannon suffered severe and permanent physical injuries, including but not limited to cerebral vascular accidents. Plaintiff Robin Hannon has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff Robin Hannon has lost past earnings and has suffered a loss of earning capacity. Plaintiff Robin Hannon has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff Robin Hannon's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## FRAUDULENT CONCEALMENT

117. Defendants are also estopped from asserting a stature of limitations defense because they fraudulently concealed their wrongful conduct from Plaintiff. The Defendants had actual knowledge of the defective and dangerous nature of the drugs involved herein, and failed to conduct adequate research and/or reveal the true results of research on their products and failed to establish their safety and efficacy. Defendants had actual knowledge of their misrepresentations, negligence, breach of warranties, and false misleading, deceptive and unconscionable conduct. Yet, each of the Defendants continued to perpetrate their wrongful conduct with the intent and fixed purpose of concealing their wrongs from Plaintiff and the public at large.

## COMPENSATORY DAMAGES

118. As a direct and proximate result of the conduct of Defendants as alleged above, Plaintiff has suffered physical pain and suffering, mental anguish, disability, and physical impairment. Plaintiff will continue to suffer same in the future. Plaintiff has incurred reasonable and necessary medical bills as result of her injuries, and will continue to require medical care and medical expenses. Plaintiff has suffered a loss of earning capacity and which will continue in the future. Plaintiff hereby brings suit to recover for all damages recognized under Rhode Island and Federal laws for the Defendants' conduct.

## EXEMPLARY AND ADDITIONAL DAMAGES

119. The acts, omissions, breaches of warranty, and/or distribution and marketing of the unreasonably dangerous and defective product ORTHO EVRA, as set forth above, were

committed by Defendants with a mental state constituting "malice" and "gross negligence" as those terms are understood in law. Such gross negligence and malice was authorized by the Defendants, ratified by the Defendants, committed by managerial agents of the Defendants, committed by unfit employees of the Defendants whom Defendants were reckless in employing, and or were committed in the performance of non-delegable duty owed by the Defendants. Such malice and gross negligence warrants the imposition of exemplary damages and was a proximate and producing cause of injury to Plaintiff.

120. Plaintiff seeks exemplary damages in such an amount as may be found to be proper under the facts and circumstances.

121. Plaintiff also seeks additional damages suffered as a result of Defendants' conduct in violation of the Rhode Island General Laws that was committed knowingly and intentionally.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a trial by jury on all Claims for Relief and as to all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for judgment against each of the Defendants as follows:

a. Awarding actual damages to the Plaintiff incidental to plaintiff Robin Hannon's purchase and use of ORTHO EVRA in an amount to be determined at trial;

b. Awarding pre-judgment and post-judgment interest to the Plaintiff;

c. Awarding the costs and the expenses of this litigation to the Plaintiff;

d. Awarding reasonable attorneys' fees and costs to the Plaintiff as provided by law; and

e. Granting all such other relief as the Court deems necessary, just and proper.

Brooks R. Magratten, No. 3585
Catherine A. Shaghalian, No. 6883
VETTER & WHITE
Attorneys for Plaintiff
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
cshaghalian@vetterandwhite.com

Michelle A. Parfitt, Esq.
Jennifer L. Orendi, Esq.
ASHCRAT & GEREL, LLP
2000 L Street, N.W., Suite 400
Washington, DC 20036
(202) 783-6400
(201) 416-6392 FAX

Dated: April 4, 2007